UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

DALLAS DIVISION

| | | |
|---|---|---|
| DEKA INVESTMENT GMBH, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>SANTANDER CONSUMER USA HOLDINGS INC., et al.,<br><br>Defendants. | § § § § § § § § § § § § § | Civil Action No. 3:15-cv-02129-K<br><br><u>CLASS ACTION</u><br><br>Hon. Ed Kinkeade |

**LEAD PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND NOTICE TO THE CLASSES**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ....1

II. SUMMARY OF THE LITIGATION ....3

III. THE SETTLEMENT TERMS ....5

IV. PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED ....7

A. The Public Interest Favors the Settlement of Complex, Class Actions ....8

B. The Applicable Criteria for Preliminary Approval ....9

1. Plaintiffs and Lead Counsel Have Adequately Represented the Classes ....10

2. The Settlement Was Negotiated at Arm's Length – There Is No Fraud or Collusion Behind the Settlement ....11

3. The Relief Provided to the Classes Is Sufficient in Light of the Costs, Risks and Delays of Further Litigation ....11

4. The Settlement Should Be Preliminarily Approved in Light of the Range of Possible Recovery ....15

5. The Opinion of Lead Counsel ....15

6. The Settlement Satisfies the Remaining Rule 23(e)(2) Factors ....16

V. THE COURT SHOULD PRELIMINARILY CERTIFY THE CLASSES TO PERMIT DISSEMINATION OF THE NOTICE ....19

A. Rules 23(a) and 23(b)(3) Factors Are Satisfied in Connection with the Proposed Settlement ....19

1. The Classes Are so Numerous that Joinder Would Be Impracticable ....20

2. There Are Questions of Law or Fact Common to the Classes ....20

3. Lead Plaintiffs' Claims Are Typical of the Classes' Claims ....21

4. Lead Plaintiffs Have Fairly and Adequately Protected the Interests of the Classes ....21

5. Questions of Law or Fact Common to the Classes Predominate Over Individual Questions and a Class Action Is Superior to Other Available Methods of Adjudicating the Controversy ....23

VI. SUBMISSION OF THE SETTLEMENT TO THE CLASSES IS APPROPRIATE ....24

VII. PROPOSED SCHEDULE ....25

**Page**

VIII. CONCLUSION ......................................................................................................26

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ....................15

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997)....................23, 24

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)....................24

*Basic v. Levinson*,
485 U.S. 224 (1988)....................24

*Buettgen v. Harless*,
No. 3:09-CV-791-K, 2011 U.S. Dist. LEXIS 53888
(N.D. Tex. May 19, 2011)....................22, 23

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) ....................8

*E. Tex. Motor Freight Sys., Inc. v. Rodriguez*,
431 U.S. 395 (1977)....................22

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011)....................24

*Fisher Bros. v. Cambridge-Lee Indus., Inc.*,
630 F. Supp. 482 (E.D. Pa. 1985) ....................16

*Garza v. Sporting Goods Props.*,
No. SA-93-CA-1082, 1996 U.S. Dist. LEXIS 2009
(W.D. Tex. Feb. 6, 1996) ....................17

*In re Apollo Grp., Inc. Sec. Litig.*,
No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995
(D. Ariz. Aug. 4, 2008), *rev'd and remanded on other grounds*,
2010 U.S. App. LEXIS 14478 (9th Cir. June 23, 2010) ....................15

*In re Beef Indus. Antitrust Litig.*,
607 F.2d 167 (5th Cir. 1979) ....................19

*In re Cobalt Int'l Energy, Inc. Sec. Litig.*,
No. H-14-3428, 2017 U.S. Dist. LEXIS 91938
(S.D. Tex. June 15, 2017) ....................4, 7

**Page**

*In re Combustion, Inc.*,
968 F. Supp. 1116 (W.D. La. 1997)....17

*In re Deepwater Horizon*,
739 F.3d 790 (5th Cir. 2014) ....19, 20, 24

*In re Deepwater Horizon*,
785 F.3d 1003 (5th Cir. 2015) ....22

*In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig.*,
MDL No. 1643, 2006 U.S. Dist. LEXIS 9726
(E.D. La. Mar. 13, 2006)....24

*In re Lease Oil Antitrust Litig.*,
186 F.R.D. 403 (S.D. Tex. 1999)....17

*In re OCA, Inc.*,
No. 05-2165, 2008 U.S. Dist. LEXIS 84869
(E.D. La. Oct. 17, 2008)....20

*In re Prudential-Bache Energy Income P'ships Sec. Litig.*,
MDL No. 888, 1994 U.S. Dist. LEXIS 6621
(E.D. La. May 18, 1994)....17

*In re Willbros Group, Inc. Sec. Litig.*,
407 F. Supp. 3d 689 (S. D. Tex. 2018)....17

*James v. City of Dallas*,
254 F.3d 551 (5th Cir. 2001) ....21

*Kamakana v. City & Cty. of Honolulu*,
447 F.3d 1172 (9th Cir. 2006) ....18

*Lewis v. Newman*,
59 F.R.D. 525 (S.D.N.Y. 1973) ....13

*Ludlow v. BP, P.L.C.*,
800 F.3d 674 (5th Cir. 2015) ....24

*Maher v. Zapata Corp.*,
714 F.2d 436 (5th Cir. 1983) ....8

*Manchaca v. Chater*,
927 F. Supp. 962 (E.D. Tex. 1996)....10, 13

**Page**

*Marcus v. J.C. Penney Co.*,
No. 6:13-cv-736-MHS-KNM, 2016 U.S. Dist. LEXIS 115795
(E.D. Tex. Aug. 29, 2016) ....................23

*McNamara v. Bre-X Minerals Ltd.*,
214 F.R.D. 424 (E.D. Tex. 2002)....................19

*McNamara v. Felderhof*,
410 F.3d 277 (5th Cir. 2005) ....................13

*Miller v. Republic Nat'l Life Ins. Co.*,
559 F.2d 426 (5th Cir. 1977) ....................8

*Mullen v. Treasure Chest Casino, L.L.C.*,
186 F.3d 620 (5th Cir. 1999) ....................21

*Oscar Private Equity Invs. v. Holland*,
No. 3:03-CV-2761-H, 2005 U.S. Dist. LEXIS 6525
(N.D. Tex. Apr. 15, 2005), *vacated and remanded on other grounds sub nom.*
*Oscar Private Equity Invs. v. Allegiance Telecom, Inc.*,
487 F.3d 261 (5th Cir. 2007) ....................21

*Parker v. Anderson*,
667 F.2d 1204 (5th Cir. 1982) ....................10

*Pearson v. Ecological Sci. Corp.*,
522 F.2d 171 (5th Cir. 1975) ....................8

*Pettway v. Am. Cast Iron Pipe Co.*,
576 F.2d 1157 (5th Cir. 1978) ....................16

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*,
390 U.S. 414 (1968)....................13

*Reed v. Gen. Motors Corp.*,
703 F.2d 170 (5th Cir. 1983) ....................10, 11, 15

*Salinas v. Roadway Express, Inc.*,
802 F.2d 787 (5th Cir. 1986) ....................10

*Schleicher v. Wendt*,
618 F.3d 679 (7th Cir. 2010) ....................24

*Torres v. S.G.E. Mgmt., L.L.C.*,
838 F.3d 629 (5th Cir. 2016) ....................24

**Page**

*United States v. Tex. Educ. Agency*,
679 F.2d 1104 (5th Cir. 1982) ..........15

*Van Bronkhorst v. Safeco Corp.*,
529 F.2d 943 (9th Cir. 1976) ..........8

*West Virginia v. Chas. Pfizer & Co.*,
314 F. Supp. 710 (S.D.N.Y. 1970),
*aff'd*, 440 F.2d 1079 (2d Cir. 1971) ..........14

*Williams v. First Nat'l Bank*,
216 U.S. 582 (1910) ..........8

*Zeidman v. J. Ray McDermott & Co.*,
651 F.2d 1030 (5th Cir. 1981) ..........20

*Zerkle v. Cleveland-Cliffs Iron Co.*,
52 F.R.D. 151 (S.D.N.Y. 1971) ..........14

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
Rule 23 ..........2, 19, 25
Rule 23(a) ..........19
Rule 23(a)(1) ..........20
Rule 23(a)(2) ..........20
Rule 23(a)(3) ..........21
Rule 23(a)(4) ..........21
Rule 23(b) ..........19
Rule 23(b)(3) ..........19, 24
Rule 23(c)(1) ..........19
Rule 23(c)(1)(C) ..........13
Rule 23(e) ..........2, 19
Rule 23(e)(1)(B) ..........9, 19
Rule 23(e)(2) ..........9, 10, 16, 18
Rule 23(e)(2)(A) ..........10
Rule 23(e)(2)(B) ..........11
Rule 23(e)(2)(C)(i) ..........11
Rule 23(e)(2)(C)(ii) ..........16
Rule 23(e)(2)(C)(iii) ..........17
Rule 23(e)(2)(C)(iv) ..........18
Rule 23(e)(2)(D) ..........18
Rule 23(e)(3) ..........9
Rule 30(b)(6) ..........23

**Page**

17 C.F.R.
§210.10b-5 ......................................................................................................................24

Lead Plaintiffs Deka Investment GmbH ("Deka") and City of Dearborn Heights Act 345 Police & Fire Retirement System ("City of Dearborn") (collectively, "Lead Plaintiffs" or "Plaintiffs") respectfully submit this memorandum in support of their motion for preliminary approval of the proposed settlement reached in this Action (the "Settlement") and for approval of the forms and manner of providing notice of the Settlement to the Classes.

## I. INTRODUCTION

As set forth in the Stipulation of Settlement dated July 28, 2020 (the "Stipulation"),[1] the Settlement provides a recovery of $47,000,000 in cash to resolve this securities class action against Defendants Santander Consumer USA Holdings Inc. ("SCUSA" or the "Company"), Thomas G. Dundon, Jason A. Kulas, Gonzalo de las Heras, Alberto Sánchez, Matthew Kabaker, Tagar C. Olson, Daniel Zilberman, Javier San Felix, Roman Blanco, Stephen A. Ferriss, Juan Carlos Alvarez and Juan Andres Yanes (the "Individual Defendants" and with SCUSA, the "SCUSA Defendants"), Citigroup Global Markets Inc., J.P. Morgan Securities LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, n/k/a BofA Securities, Inc., Deutsche Bank Securities Inc. Santander Investment Securities Inc., Barclays Capital Inc., Goldman Sachs & Co., LLC, Morgan Stanley & Co. LLC, RBC Capital Markets, LLC, BMO Capital Markets Corp., Credit Suisse Securities (USA) LLC, UBS Securities LLC, Wells Fargo Securities, LLC, KKR Capital Markets LLC, Sandler O'Neill & Partners, L.P., Stephens Inc., and LOYAL3 Securities Inc. (the "Underwriter Defendants" and with the SCUSA Defendants, the "Defendants"). After full consideration of the strengths and weaknesses of the parties' respective claims and defenses, this Settlement was reached following extensive arm's length mediation overseen by an experienced mediator, Robert A. Meyer, Esq. of JAMS.

---

[1] All capitalized terms not otherwise defined herein have the same meanings as set forth in the Stipulation. *See* Appendix in Support of Lead Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement and Notice to the Classes ("App") at App. 001-App. 042. Citations are omitted and emphasis is added throughout unless otherwise noted.

The negotiations occurred in two discrete stages. The first phase consisted of two in-person mediations between Plaintiffs and the SCUSA Defendants, one on December 16, 2016 and another on November 14, 2019. The second phase of the negotiations, during which Mr. Meyer attempted to resolve the litigation through discussions with Plaintiffs and the SCUSA Defendants in the months following the November 14, 2019 in-person mediation, ultimately resulted in the reaching of an agreement in principle to resolve the Action. The Settlement was negotiated by counsel with extensive experience in securities class actions who intelligently evaluated the merits of Plaintiffs' claims, including the risks to recovery and likelihood of ultimate success. With the benefit of substantial briefing and discussions, and a thorough understanding of the strengths and weaknesses of their positions, the Settling Parties reached an agreement in principle on April 22, 2020 to resolve the case for a $47 million cash payment by or on behalf of Defendants.

Plaintiffs and their counsel approve of the Settlement. Plaintiffs are sophisticated institutional investors, with billions of dollars of assets under management and prior experience in securities fraud litigation. Lead Counsel have substantial securities litigation experience, have litigated hundreds of cases to resolution, and are recognized as leading experts in the field. Plaintiffs retained these attorneys specifically because of their expertise and acumen in complex securities matters like this one. Plaintiffs and Lead Counsel understood that there were serious risks in continued litigation, and while Plaintiffs believe strongly in the merits of their case, they recognize that Defendants do as well. At trial, Plaintiffs would have had the burden of proving each of the elements of their claims, which arise under both the Securities Act of 1933 (the "1933 Act") and under the Securities Exchange Act of 1934 (the "1934 Act"). Trial would have been lengthy and very expensive, and either party could have prevailed.

At the preliminary approval stage of settlement of a class action under Rule 23, the Court is asked to: (i) evaluate the terms of the Settlement under Rule 23(e), as recently amended, and under

the Fifth Circuit's standards; and (ii) certify the Class for settlement purposes. As set forth below, the proposed Settlement easily satisfies the applicable standards. The Settlement is an excellent result for the Classes, providing for an all cash payment of $47 million. If the Court grants preliminary approval of the Settlement, notice will be given to the Classes, informing them of, among other things, their right to object to or opt out of the Settlement and the deadlines for doing so, the claims submission procedure and deadline, and of the date set for a final Settlement Hearing. Plaintiffs respectfully request the Court take this first step in the approval process, and grant preliminary approval of the proposed Settlement and certify the proposed Classes for the purposes of settlement.

## II. SUMMARY OF THE LITIGATION

The Action was brought on behalf of all persons and entities who purchased or otherwise acquired SCUSA common stock between January 23, 2014 through June 12, 2014, inclusive (the "Class Period") and were damaged thereby. The initial complaint was filed on August 26, 2014 in the United States District Court for the Southern District of New York. It was transferred to this Court on June 17, 2015. Dkt. No. 48. On September 3, 2015, the Court appointed Deka Investment GmbH and City of Dearborn Heights Act 345 Police & Fire Retirement System as Lead Plaintiffs, and appointed Grant & Eisenhofer P.A. and Robbins Geller Rudman & Dowd LLP as Lead Counsel. Dkt. No. 99. Balon B. Bradley and Joe Kendall serve as Local Counsel for the Lead Plaintiffs. Dkt. Nos. 99, 146.

On October 30, 2015, Lead Plaintiffs filed the First Amended Complaint for Violations of the Federal Securities Laws ("Complaint"), Dkt. No. 104, which alleges that Defendants violated §§11 and 12(a)(2) of the 1933 Act, and §10(b)(5) of the 1934 Act. Plaintiffs also asserted control person claims under §15 of the 1933 Act and §20(a) of the 1934 Act.

SCUSA conducted an initial public offering of its common stock on January 23, 2014 ("IPO"). The Complaint alleges that, both prior to the IPO and during the Class Period, SCUSA told investors that they could expect to receive dividend payments, but failed to disclose that there were restrictions in its ability to pay those dividends, due to regulations on bank holding companies imposed by the Federal Reserve. It further alleges that Defendants misled investors about the sufficiency of their compliance controls and risk management capabilities. For purposes of the 1934 Act claims, the Complaint also alleges facts demonstrating that Defendants were, at least, severely reckless in their failure to disclose the dividend restrictions and compliance and risk failures.

On December 18, 2015, Defendants moved to dismiss the Complaint. After full briefing by the parties, this Court denied the motion to dismiss in its entirety on June 13, 2016. Dkt. No. 128. The parties began negotiations concerning discovery, but on September 21, 2016, this Court issued an order staying all merits discovery until after a class had been certified (the "Class Certification Scheduling Order"), Dkt. No. 143.

On December 2, 2016, Lead Plaintiffs moved for class certification. Dkt. No. 151. Defendants opposed the motion on February 17, 2017. Dkt. No. 169. Lead Plaintiffs filed a reply on March 31, 2017. Dkt. No. 176. In connection with Lead Plaintiffs' Motion for Class Certification, the parties engaged in extensive discovery on issues pertaining to class certification, which included a total of five depositions of representatives of Lead Plaintiffs, and of the expert witnesses for Lead Plaintiffs and Defendants. On May 31, 2017, this Court held an evidentiary hearing on class certification. The Court heard testimony from both Lead Plaintiffs' and Defendants' experts.

On July 11, 2017, the Court entered an order reserving ruling on Lead Plaintiffs' class certification motion and staying the entire case pending the outcome of an appeal in an unrelated case, *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, No. H-14-3428, 2017 U.S. Dist. LEXIS 91938 (S.D. Tex. June 15, 2017). Dkt. No. 203. Lead Plaintiffs filed two motions seeking to lift the stay of the

Action, Dkt. Nos. 209, 222, both of which Defendants opposed, Dkt. Nos. 211, 224, and to which Lead Plaintiffs replied. Dkt. Nos. 213, 225. On October 1, 2018, the Court vacated its stay of the Action, but did not lift its stay on merits discovery. Dkt. No. 229. On March 21, 2019, Lead Plaintiffs renewed their motion to proceed with merits discovery. Dkt. No. 238. Both that motion, and Lead Plaintiffs' Motion for Class Certification, remain before the Court.

On December 16, 2016, Lead Plaintiffs and the SCUSA Defendants engaged in an in-person mediation session before Robert A. Meyer, Esq., of JAMS. Prior to that mediation, those parties exchanged and provided to Mr. Meyer detailed memoranda and other materials discussing the strengths and weaknesses of the claims and defenses. The parties negotiated in good faith, but were unable to reach an agreement at that time.

On November 14, 2019, Lead Plaintiffs and the SCUSA Defendants engaged in another in-person mediation, also before Mr. Meyer. Prior to that session, those parties provided Mr. Meyer with detailed updates of the litigation. Although the parties were unable to reach an agreement at the in-person mediation, discussions continued through Mr. Meyer. On April 22, 2020, the Settling Parties reached an agreement to settle the claims for a sum of Forty-Seven Million Dollars ($47,000,000). On April 23, 2020, counsel for Lead Plaintiffs notified the Court that an agreement in principle had been reached.

## III. THE SETTLEMENT TERMS

This Settlement requires Defendants to pay or cause to be paid $47 million into the Escrow Account within five business days of entry of the Court's preliminary approval order. This amount, plus all accrued interest, comprises the Settlement Fund.

Notice to the Classes and the cost of settlement administration ("Notice and Administration Costs") will be funded by the Settlement Fund. App. 016-App. 017, ¶2.7. Plaintiffs propose a nationally recognized class action settlement administrator, Gilardi & Co. LLC, to be retained here

subject to the Court's approval. The proposed notice plan and plan for claims processing is discussed below in §VI and in the Declaration of Michael Joaquin Regarding Notice and Administration ("Joaquin Declaration"), submitted herewith. *See* App. 103-App. 113.

Lead Counsel will submit an application with their opening papers in support of final approval of the Settlement for: (a) an award of attorneys' fees not to exceed 30% of the Settlement Amount; (b) payment of expenses or charges resulting from the prosecution of the Action not to exceed $1,000,000; and (c) any interest on such amounts at the same rate and for the same period as earned by the Settlement Fund.

Plaintiffs intend to request an amount not to exceed $100,000 in the aggregate, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), in connection with their representation of the Classes. Any such amounts the Court awards shall be paid from the Settlement Fund.

Once Notice and Administration Costs, Taxes, Tax Expenses and Court-approved attorneys' fees and expenses, and any award to the Plaintiffs for their costs and expenses pursuant to the PSLRA have been paid from the Settlement Fund, the remaining amount, the Net Settlement Fund, shall be distributed pursuant to the Court-approved Plan of Allocation to Authorized Claimants who are entitled to a distribution of at least $10. Any amount remaining following the distribution shall be redistributed in an economically feasible manner. The Plan of Allocation treats all Class Members equitably based on the timing of their SCUSA common stock purchases, acquisitions and sales.

Plaintiffs and SCUSA have entered into a Supplemental Agreement which provides that if prior to the Settlement Hearing, the number of shares of SCUSA common stock represented by valid claims by Persons who would otherwise be members of the Classes, but who request exclusion from

the Classes, exceeds a certain amount, SCUSA shall have the option to terminate the Settlement. App. 030-App. 031, ¶7.3.

In exchange for the benefits provided under the Settlement, Class Members will release any and all claims against Defendants relating to or arising from: (i) the purchase or acquisition of SCUSA common stock during the Class Period; and (ii) the allegations, transactions, facts, matters or occurrences, representations or omissions involved or set forth in, or related to the Complaint. App. 012-App. 013, ¶1.26, App. 020-App. 021, ¶4.1.[2]

## IV. PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

The Settlement requires the payment of $47,000,000 in cash for the benefit of the Classes. Plaintiffs believe and respectfully submit that the Settlement is a very good result under the circumstances, is clearly within the range of reasonableness, and therefore warrants preliminary approval.

---

[2] The Stipulation defines "Released Plaintiffs' Claims" as follows: "[A]ny and all claims, causes of action, complaints, third-party claims, cross-claims, counterclaims, demands, liabilities, obligations, promises, agreements, controversies, actions, suits, rights, damages, costs, losses, debts, charges, and expenses (including attorneys' fees, expert fees, and disbursements of counsel and other professionals) of any and every nature and description whatsoever whether known or unknown, suspected or unsuspected, foreseen or unforeseen, ripened or unripened, accrued or unaccrued, matured or not matured, whether arising under federal, state, local, common, foreign law, or any other law, rule, or regulation (whether foreign or domestic), whether arising in equity or under the law of contract, tort, malpractice, statutory breach, or any other legal right or duty, whether direct, individual, representative, or in any other capacity, whether class or individual in nature, and to the fullest extent that the law permits their release in the Action, that Lead Plaintiffs or any other member of the Classes: (i) asserted in the Action, the Complaint, the Initial Complaint, or any other pleadings or briefs filed in the Action; or (ii) ever could have asserted in any forum that arise out of, relate to, are connected with, or are in any way based upon or related to both (a) the purchase, acquisition or holding of SCUSA common stock in or pursuant to SCUSA's January 23, 2014 initial public offering and/or during the Class Period, and (b) the allegations, transactions, facts, matters, occurrences, representations, or omissions involved, set forth, or referred to in the Complaint, the Initial Complaint, or any other pleadings or briefs filed by any party in the Action, except for claims relating to the enforcement of the Settlement. 'Released Plaintiffs' Claims' includes 'Unknown Claims' as defined in ¶1.34 hereof. For the avoidance of doubt, "Released Plaintiffs' Claims" does not include any derivative claims, including, but not limited to, the derivative claims asserted in the action entitled *In re Santander Consumer USA Holdings, Inc. Deriv. Litig.*, Consol. C.A. No. 11614-VCG (Del. Ch.)." Stipulation ¶ 1.26.

### A. The Public Interest Favors the Settlement of Complex, Class Actions

For well over a century, courts across the country have pronounced a preference for settlement compromises of disputed claims. *See, e.g.*, *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910). The Fifth Circuit is no different, proclaiming that settlements "'will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits.'" *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977); *Pearson v. Ecological Sci. Corp.*, 522 F.2d 171, 176 (5th Cir. 1975).

Settlements of class actions and shareholder litigation are "particularly favored" and are not to be lightly rejected. *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983); *see also Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). The Fifth Circuit has recognized that class actions have a "well deserved reputation as being most complex," which compels an "overriding public interest in favor of settlement." *Cotton*, 559 F.2d at 1331; *accord Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). Thus, in determining whether to approve a settlement, the trial judge may adopt the parties' and their counsel's assessment of the merits of the case, rather than making an independent decision of the merits. *Maher*, 714 F.2d at 455. The experience and acumen of Lead Counsel lends further weight to this proposition.

When examined under the applicable criteria, this Settlement is a very good result for the Classes, particularly since it avoids the risk, delay and expense of a trial. Lead Counsel believes there is a significant possibility that there would not be a more favorable result for the Classes after trial and the likely post-trial motions and appeals. The Settlement achieves a certain and substantial recovery for Class Members and avoids the risk that there would be no recovery at all if the Action continued.

**B. The Applicable Criteria for Preliminary Approval**

Under Rule 23(e)(1), the question for preliminary approval is whether "the court will likely be able to . . . approve the proposal under Rule 23(e)(2)," which provision governs final approval. Fed. R. Civ. P. 23(e)(1)(B). Thus the Court takes a preliminary look at the standards governing final approval, which is whether the settlement is "fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2). To make that determination, the Court must look at the following factors under Rule 23(e)(2):

> (2) ***Approval of the Proposal***. If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> (i) the costs, risks, and delay of trial and appeal;
>
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In addition, the Fifth Circuit has established a six-pronged test, which includes certain factors that overlap with the Rule 23(e)(2) factors, to be applied to the approval of class settlements:

1. the assurance that there is no fraud or collusion behind the settlement;
2. the stage of the proceedings and the amount of discovery completed;
3. the probability of plaintiff's success on the merits;

4. the range of possible recovery;

5. the complexity, expense, and likely duration of the litigation; and

6. the opinions of class counsel, class representatives, and absent class members.

*Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983); *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982); *see also Salinas v. Roadway Express, Inc.*, 802 F.2d 787, 789 (5th Cir. 1986) (considering the above factors in affirming district court's order approving a consent decree in class action lawsuit).

The Settlement satisfies each factor established by Rule 23(e)(2) and the Fifth Circuit.

### 1. Plaintiffs and Lead Counsel Have Adequately Represented the Classes

Plaintiffs and Lead Counsel have adequately represented the Classes, allowing Lead Counsel to intelligently assess the strengths and weaknesses of their case, satisfying both Rule 23(e)(2)(A) and the Fifth Circuit's second factor (the stage of the proceeding and the amount of discovery completed). Lead Counsel conducted a thorough investigation of the facts both before and during the course of the Action; Lead Counsel reviewed and analyzed voluminous publicly available documents regarding SCUSA, including SCUSA's public filings, identifying, locating and speaking with former employees who provided more details and greater depth into the alleged wrongdoing. This investigation allowed Lead Counsel to better understand the key factual issues at the core of the Action in negotiating the Settlement, *i.e.*, they had a "full understanding of the legal and factual issues surrounding this case." *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996). Having completed sufficient investigation, Lead Counsel have settled this Action on a highly favorable basis to the Classes without unduly prolonging it and without the expense and risk of a trial.

### 2. The Settlement Was Negotiated at Arm's Length – There Is No Fraud or Collusion Behind the Settlement

There is no collusion in the Settlement, satisfying Rule 23(e)(2)(B) and the Fifth Circuit's first factor (no fraud or collusion behind settlement). This Settlement was reached only after a lengthy process that involved two mediation sessions, as well as several months of negotiations through an experienced mediator. In addition, Lead Counsel have many years of experience in litigating securities class actions and have negotiated scores of other class settlements which have been approved by courts throughout the country. Lead Counsel enjoy well deserved reputations for skill and success in the prosecution and favorable resolution of securities class actions and other complex civil matters. *See* www.rgrdlaw.com; www.gelaw.com. Likewise, Defendants have been at all times represented by law firms with reputations for the tenacious defense of class actions and other complex civil matters. The Settlement was negotiated by senior lawyers for Plaintiffs and the SCUSA Defendants, and assisted by Mr. Meyer. There can be no question that the Classes were fairly and adequately represented in the course of these proceedings and that the Settlement was not collusive.

### 3. The Relief Provided to the Classes Is Sufficient in Light of the Costs, Risks and Delays of Further Litigation

Rule 23(e)(2)(C)(i) asks whether the relief provided under the Settlement is adequate, taking into account the costs, risks and delay of trial and appeal. The Fifth Circuit's third and fifth factors similarly look at the probability of success on the merits as well as the complexity, expense and likely duration of the litigation. *Reed*, 703 F.2d at 172. The proposed Settlement satisfies these factors as well.

As in every complex case of this kind, Plaintiffs faced formidable obstacles to recovery at trial, both with respect to liability and damages. The principal claims are based on §§11 and 12(a)(2) of the 1933 Act, and §§10(b) and 20(a) of the 1934 Act. Plaintiffs allege that Defendants failed to

make material disclosures concerning certain restrictions on SCUSA's ability to pay dividends. Specifically, while SCUSA expressed no hesitancy in its ability to pay dividends (stating that it "will pay" dividends), it did not disclose that its ability to pay such dividends hinged on approval from the Federal Reserve. When the Company announced that it had not received such approval, the price of SCUSA's stock fell. The stock price fell further when the Company announced material weaknesses in its risk management and compliance controls.

### a. Risks in Proving Liability and Damages, and in Certifying the Classes

Plaintiffs believe that the allegations of the Complaint would ultimately be borne out by the evidence. Nevertheless, they also recognize that they faced significant hurdles to proving liability at trial. Defendants have asserted formidable defenses which they would likely have continued to press throughout the duration of the litigation. In particular, Defendants have argued that Lead Plaintiffs' 1933 Act claims are time-barred (Dkt. No. 106 at 10-12), and that Lead Plaintiffs failed to allege any actionable misstatement, both for purposes of the 1933 Act and the 1934 Act. *Id.* at 13-22. Defendants also argued that they did not possess the requisite scienter required for a 1933 Act claim. *Id.* at 25-29. Defendants would likely have retained highly qualified experts to testify about the regulatory measures at issue.

Even if Plaintiffs established liability at trial, they faced substantial risks in proving loss causation and damages. Defendants would have argued that any losses suffered by Class Members on their Santander investments were not attributable to the alleged public misstatements.[3] Issues relating to loss causation and damages would also have likely come down to an inherently unpredictable and hotly disputed "battle of the experts." Indeed, such a battle of the experts already occurred at the class certification stage. Lead Plaintiffs' expert Mr. Torchio performed an event

---

3 Defendants also argued that Class Members would be unable to trace their stock purchases to the initial public offering. Dkt. No. 171-2 at 13-16.

study demonstrating that there was a cause-and-effect relationship between news of the Company and the price of its stock. Dkt. No. 153 at App. 117-149. Defendants' expert, Ms. Allen, attempted to rebut Mr. Torchio's position. Dkt. No. 170 at App. 961-980. Accordingly, in the absence of the Settlement, there was a very real risk that the Classes would have recovered an amount significantly less than the Settlement Amount – or even nothing at all. Thus, the payment of $47,000,000, particularly when viewed in the context of the significant risks and uncertainties involved in proving both liability and damages, weighs strongly in favor of approving the Settlement.

Even if the Court granted Plaintiffs' pending class certification, Defendants would likely seek an interlocutory appeal or move to decertify one or both classes prior to trial. Class certification may be reviewed at any stage of the litigation prior to entry of final judgment. *See* Fed. R. Civ. P. 23(c)(1)(C); *McNamara v. Felderhof*, 410 F.3d 277, 280 n.8 (5th Cir. 2005) (noting a district court can reconsider or modify its class certification order).

In sum, Plaintiffs recognize that, had the case proceeded to trial, it may have been very difficult to recover all or even most of the damages claimed. Therefore, Lead Plaintiffs and their counsel believe that the Settlement for $47,000,000 in cash represents an excellent result for the Classes.

**b. The Complexity, Expense, and Likely Duration of This Action**

Another reason for counsel to recommend, and courts to approve, a proposed settlement is the complexity, expense and likely duration of further litigation (factor five). *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424 (1968) (court must consider, *inter alia*, "the complexity, expense, and likely duration of such litigation"); *Manchaca*, 927 F. Supp. at 966.[4] Here, several factors are present which make it more likely that, without the

[4] Courts have frequently recognized, in evaluating a proposed settlement of a securities class action, that such litigation "is notably difficult and notoriously uncertain." *Lewis v. Newman*, 59

Settlement, this case would require additional large expenditures of time and money and there would be a significant risk that the Classes would obtain a result far less beneficial than the one provided by the Settlement. The factors include the following:

- Defendants are and have been at all times represented by very capable counsel who are well versed in the defense of complex securities class actions such as the Action.

- At the time of the proposed Settlement, Lead Plaintiffs' Motion for Class Certification remained outstanding, and there was a risk that the Court would not certify the Classes. Assuming the Classes were certified, Lead Plaintiffs would face months, if not years, of fact and expert discovery. Discovery – which is already lengthy in securities class actions – would have posed unique challenges here, that would likely extend the timetable even longer. In particular, many of the principal actors in the allegations are no longer associated with the Company. Collecting both documentary and testimonial evidence from them would have required additional efforts beyond those (already substantial) efforts which are typically expended in securities actions. After a lengthy discovery period, which would have included taking depositions of dozens of witnesses, and reviewing millions of pages of documents, the parties would have engaged in extensive expert discovery, likely motions for summary judgment and possible appeals. All of these efforts would be time consuming and resource intensive.

- A trial of the Action would unquestionably require months of effort and involve the introduction of hundreds of exhibits, addressing complicated regulatory matters, vigorously contested evidentiary motions, the expenditure of substantial additional expenses, and conflicting expert testimony, the outcome of which is by no means certain.

- Even if the Classes recovered a judgment after trial that was larger than the amount of the Settlement, given the time value of money, such a future recovery might not be more beneficial than receiving the benefits of the proposed Settlement now. Moreover, any judgment after trial would still be subject to the continuing risks and vicissitudes of litigation, through likely appeals. Experience shows that even very large judgments, recovered after lengthy litigation and trial, can be completely lost on appeal.[5]

---

F.R.D. 525, 528 (S.D.N.Y. 1973) (citing *Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y. 1971)). Accordingly, compromises of securities class actions are particularly appropriate.

[5] As the court noted in *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971), "It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced. Merely by way of example, two instances in this Court may be cited where offers of settlement were rejected by some plaintiffs and were disapproved by this Court. The trial in each case then resulted unfavorably for plaintiffs; in one case they recovered nothing and in the other they recovered less than the amount which had been offered in settlement." *See, e.g.*, *In re Apollo Grp., Inc. Sec. Litig.*, No. CV

All of these foregoing factors demonstrate that, given the significant risks inherent in this litigation, the result achieved for the Classes is exceptional, and warrants the Court's preliminary approval of the Settlement. Indeed, the Fifth Circuit has recognized that securities class actions are among the riskiest litigations from the plaintiffs' perspective, opining that "[t]o be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009).

**4. The Settlement Should Be Preliminarily Approved in Light of the Range of Possible Recovery**

Given the possibility that this Action may have resulted in a recovery of less than the proposed Settlement amount, if not zero for investors, the $47,000,000 recovery achieved by Plaintiffs is significant. In addition to falsity and scienter concerns, Defendants have also asserted arguments that the claims are time-barred, and that the case may not proceed as a class action. In addition, Defendants raised loss causation arguments that had the potential to drastically reduce investors' recoverable damages in this case. As such, the $47 million recovery achieved by Plaintiffs represents a very good result for the Classes under the circumstances.

**5. The Opinion of Lead Counsel**

A strong initial presumption that the settlement is fair and reasonable is created where, as here, experienced counsel have negotiated a settlement at arm's length, with the assistance of a mediator. *United States v. Tex. Educ. Agency*, 679 F.2d 1104, 1108 (5th Cir. 1982). The Fifth Circuit has recognized that courts must rely to a large degree on the judgment of competent counsel, terming such counsel the "linchpin" of an adequate settlement. *Reed*, 703 F.2d at 175. Thus, if experienced counsel determine that a settlement is in the class's best interest, "the attorney's views

---

04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008), *rev'd and remanded on other grounds*, 2010 U.S. App. LEXIS 14478 (9th Cir. June 23, 2010).

must be accorded great weight." *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978).

Lead Counsel acquired a thorough understanding of this Action through their independent investigation and the negotiation process, and submit that the Settlement is appropriate and should be approved. The view of Lead Counsel, while not conclusive, is "entitled to significant weight." *Fisher Bros. v. Cambridge-Lee Indus., Inc.*, 630 F. Supp. 482, 488 (E.D. Pa. 1985).

### 6. The Settlement Satisfies the Remaining Rule 23(e)(2) Factors

#### a. The Proposed Method for Distributing Relief Is Effective

As demonstrated in the Joaquin Declaration submitted herewith (App. 103-App. 113), the method and effectiveness of the proposed notice and claims administration process required by Rule 23(e)(2)(C)(ii) are effective. The notice plan includes direct mail notice to all those who can be identified with reasonable effort supplemented by the publication of the Summary Notice in *Investor's Business Daily* and over the *PR Newswire*. In addition, a settlement-specific website will be created where key documents will be posted, including the Stipulation, Notice, Proof of Claim and Release and Notice Order. App. 110, ¶19.

The claims process is also effective and includes a standard claim form which requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation. The Plan of Allocation will govern how Class Members' claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants. The Plan of Allocation was prepared by Lead Plaintiffs' damages expert and is based on an analysis estimating the amount of artificial inflation in the prices of SCUSA common stock during the Class Period. A thorough claim review process, including how deficiencies are addressed, is also explained in the Joaquin Declaration. App. 112-App. 113, ¶¶ 26-29.

**b. Attorneys' Fees**

Rule 23(e)(2)(C)(iii) addresses the proposed award of attorney's fees. As discussed above (at §III), Lead Counsel intend to seek an award of attorneys' fees in the amount of 30% of the Settlement Amount and expenses in an amount not to exceed $1,000,000, plus interest on both amounts. This fee request is in line with – if not lower than – several other settlements approved in this District. *See, e.g.*, *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 445 (S.D. Tex. 1999) ("Class counsel and experts both reported to the Court that it is customary in large, complex commercial litigation for contingency fees to be set at 33 to 40%."); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1133 (W.D. La. 1997) (awarding 36% of the common fund as fee and noting: "[u]sually 50 percent of the fund is the upper limit on a reasonable fee award from a common fund to assure that fees do not consume a disproportionate part of the recovery obtained for the class, though somewhat larger percentages are not unprecedented"); *Garza v. Sporting Goods Props.*, No. SA-93-CA-1082, 1996 U.S. Dist. LEXIS 2009, at *112 (W.D. Tex. Feb. 6, 1996) (noting, "[t]his Court concurs that 33 1/3% to 40% is the customary contingency fee range" and awarding a 39.7% fee); *In re Prudential-Bache Energy Income P'ships Sec. Litig.*, MDL No. 888, 1994 U.S. Dist. LEXIS 6621, at *15-*16 (E.D. La. May 18, 1994) ("Customary fees in common fund cases appear to range from 20% to 40%."). In addition, Lead Counsel will request that any award of fees and expenses be paid upon entry of the order awarding such fees and expenses. *See, e.g.*, *In re Willbros Group, Inc. Sec. Litig.*, 407 F. Supp. 3d 689, 690 (S. D. Tex. 2018) ("The awarded attorneys' fees and expenses and interest earned thereon shall be paid to Lead Counsel from the Settlement Fund immediately upon entry of the Order, subject to the terms, conditions, and obligations of the Settlement Agreement, and in particular ¶8.2 thereof, which terms, conditions, and obligations are incorporated herein.'").

Further, as explained in the Notice, the Plaintiffs intend to request an amount not to exceed $100,000 pursuant to the PSLRA in connection with their representation of the Classes.

**c. The Parties Have No Other Agreements Besides the Supplemental Agreement Concerning Opt-Outs**

Rule 23(e)(2)(C)(iv) requires the disclosure of any other agreement between the parties. The Settling Parties have entered into a standard supplemental agreement, which provides that if Class Members opt out of the Settlement such that the number of shares of SCUSA common stock represented by such opt outs equals or exceeds a certain amount, SCUSA shall have the option to terminate the Settlement. App. 030-App. 031, ¶7.3.[6]

**d. Class Members Are Treated Equitably**

The final factor, Rule 23(e)(2)(D), looks at whether Class Members are treated equitably. As reflected in the Plan of Allocation (App. 070-App. 077 at 13-20), the Settlement treats Class Members equitably relative to each other, based on the timing of their SCUSA common stock purchases, acquisitions and sales, and by providing that each Authorized Claimant shall receive his, her or its *pro rata* share of the Net Settlement Fund based on their recognized losses.

* * *

Each approval factor identified under Rule 23(e)(2) and the Fifth Circuit is satisfied. Given the litigation risks involved and the complexity of the underlying issues, the $47 million recovery is an outstanding one. It could not have been achieved without full commitment by Plaintiffs and their counsel. Plaintiffs and Plaintiffs' Counsel respectfully submit that the Settlement is both fair and adequate and that it meets each of the Rule 23(e)(2) factors such that notice of the Settlement should be sent to the Classes.

---

[6] There are "compelling reasons" for keeping the Supplemental Agreement confidential. *See Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). Keeping confidential the threshold number of exclusions which gives SCUSA the option to terminate the Settlement is necessary to avoid enabling one or more stockholders to selfishly use this knowledge to insist on a higher payout for themselves while threatening to eviscerate the Settlement, which would be detrimental to the interests of the Classes.

## V. THE COURT SHOULD PRELIMINARILY CERTIFY THE CLASSES TO PERMIT DISSEMINATION OF THE NOTICE

Pursuant to Rule 23(e)(1), the Court must "direct notice in a reasonable manner to all class members who would be bound by the proposal" before granting final approval to a proposed settlement. Fed. R. Civ. P. 23(e)(1)(B). One of the grounds for a decision to give notice is a "showing that the court will likely be able to . . . certify the class for purposes of judgment on the proposal." *Id.*. To provide notice to a proposed class, the Fifth Circuit has expressed approval of the practice of "establish[ing] a pre-certification settlement class." *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 177 (5th Cir. 1979) (noting that a "'tentative class would appear to be a form of conditional certification sanctioned by Rule 23(c)(1)'"). Notably, the Fifth Circuit has explained that "'it is altogether proper and consistent for a court to certify a class for settlement purposes, while it might have had more difficulty reaching this determination in a different context.'" *Id.* at 178.

Here, the Court should determine for "purposes of issuance of notice" that "the settlement class is preliminarily certifiable." *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 430 (E.D. Tex. 2002).

### A. Rules 23(a) and 23(b)(3) Factors Are Satisfied in Connection with the Proposed Settlement

"'The hallmark of Rule 23 is the flexibility it affords to the courts to utilize the class device in a particular case to best serve the ends of justice for the affected parties and to promote judicial efficiencies.'" *Beef Indus.*, 607 F.2d at 177. Indeed, "[t]hrough the procedural mechanism of a class settlement, defendants 'are entitled to settle claims pending against them on a class-wide basis even if a court believes that those claims may be meritless, provided that the class is properly certified under Rules 23(a) and (b) and the settlement is fair under Rule 23(e).'" *In re Deepwater Horizon*, 739 F.3d 790, 807 (5th Cir. 2014). As detailed below, the requirements of both Rules 23(a) and 23(b)(3) are satisfied such that the Classes may be certified for settlement purposes.

### 1. The Classes Are so Numerous that Joinder Would Be Impracticable

The Fifth Circuit has held that "the prerequisite expressed in Rule 23(a)(1) is generally assumed to have been met in class action suits involving nationally traded securities." *Zeidman v. J. Ray McDermott & Co*., 651 F.2d 1030, 1039 (5th Cir. 1981). Evidence of numerosity in a securities case can consist of "the number of shares traded" during the relevant period. *Id.*

Here, Lead Plaintiffs allege that over 348 million shares of SCUSA common stock were outstanding at the time the relevant conduct occurred. *See* Complaint, ¶33. This figure "relie[s] on a common-sense assumption" – and "indeed a reasonable one" – that "any class composed of the sellers of a nationally traded security during a period in which hundreds of thousands or even millions of shares of the security were traded must necessarily be 'so numerous that joinder of all members is impracticable.'" *Zeidman*, 651 F.2d at 1039; *In re OCA, Inc.*, No. 05-2165, 2008 U.S. Dist. LEXIS 84869, at *26 (E.D. La. Oct. 17, 2008) ("Here, plaintiffs have provided evidence that OCA had 50 million shares of stock that were actively traded during the Class Period, and this figure supports an inference that there is a sufficiently large plaintiff class to satisfy the numerosity requirement.").

Numerosity is satisfied for purposes of this proposed Settlement.

### 2. There Are Questions of Law or Fact Common to the Classes

"To satisfy the commonality requirement under Rule 23(a)(2), class members must raise at least one contention that is central to the validity of each class member's claims." *Deepwater Horizon*, 739 F.3d at 810. The common questions here include whether the 1933 Act and/or the 1934 Act was violated by Defendants' acts as alleged in the Complaint and to what extent the members of the Classes have sustained damages and the proper measure of damages. Thus, the "legal requirement that class members have all 'suffered the same injury' can be satisfied by an

instance of the defendant's injurious conduct." *Id.* Commonality is satisfied for purposes of this proposed Settlement.

### 3. Lead Plaintiffs' Claims Are Typical of the Classes' Claims

Typicality under Rule 23(a)(3) requires that the class representatives' claims "'have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.'" *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001). As with commonality "'the test for typicality is not demanding. It focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent.'" *Id.*. "'Typicality does not require a complete identity of claims.'" *Id.*; *accord Mullen v. Treasure Chest Casino, L.L.C.*, 186 F.3d 620, 625 (5th Cir. 1999).

The same facts that establish commonality establish typicality here: the Lead Plaintiffs each purchased SCUSA stock at the time its public trading price was allegedly inflated by the misrepresentations and omissions that also caused absent Class Members to pay higher prices for SCUSA stock, and Lead Plaintiffs are alleged to have suffered legal damages as a result of the same corrective events that are alleged to have caused absent Class Members' damages. Accordingly, typicality is established here. *E.g.*, *Oscar Private Equity Invs. v. Holland*, No. 3:03-CV-2761-H, 2005 U.S. Dist. LEXIS 6525, at *21 (N.D. Tex. Apr. 15, 2005), *vacated and remanded on other grounds sub nom. Oscar Private Equity Invs. v. Allegiance Telecom, Inc.*, 487 F.3d 261 (5th Cir. 2007) (typicality satisfied when lead plaintiff's claims arose from the same alleged misrepresentations as the rest of the class).

### 4. Lead Plaintiffs Have Fairly and Adequately Protected the Interests of the Classes

Rule 23(a)(4)'s adequacy prong requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To determine adequacy,

courts in the Fifth Circuit utilize a three-prong test, wherein the proposed class representatives must show that: (1) there are no conflicts of interest between them and the proposed class; (2) the proposed class representatives have the willingness and ability to play an active role in the litigation and vigorously represent the class, while protecting the interests of the absentee class members; and (3) that class counsel has the competence and ability to vigorously conduct the litigation. *Buettgen v. Harless*, No. 3:09-CV-791-K, 2011 U.S. Dist. LEXIS 53888, at *13 (N.D. Tex. May 19, 2011).

The crux of the inquiry regarding the adequacy of proposed class representatives is whether they are """part of the class and possess the same interest and suffer the same injury as the class members""" and whether they have any interests that are antagonistic to the rest of the class. *In re Deepwater Horizon*, 785 F.3d 1003, 1015 (5th Cir. 2015) (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395 (1977)). Here, the first part of the test is easily satisfied. Each of the Lead Plaintiffs purchased SCUSA common stock when the stock was allegedly inflated, and each incurred legal damages as a result of the same stock price decline that is alleged to have injured absent Class Members. The second part of the test is also easily satisfied, as none of the Lead Plaintiffs has any interest that is in conflict with the interests of absent Class Members. Like all absent Class Members, each of the Lead Plaintiffs has a strong interest in proving that the alleged statements were materially false or misleading, were made with scienter (with respect to the 1934 Act claims), were material, and caused damages to Class Members.

Each of the Lead Plaintiffs has maintained an active role in this litigation, including by seeking appointment as Lead Plaintiffs and regularly communicating with counsel regarding the status of and developments in this case. Further, Lead Plaintiffs were kept apprised during the negotiation of this Settlement, and ultimately concluded that it was fair and appropriate. This level of involvement in the prosecution and settlement of the claims highlights their adequacy as lead plaintiffs. *See, e.g.*, *Buettgen*, 2011 U.S. Dist. LEXIS 53888, at *14 (finding adequacy where

movant "has been kept informed of the progress of this lawsuit, [and] has moved this Court to appoint it lead plaintiff").

In addition, Lead Plaintiffs provided extensive discovery during the Class Certification phase. Specifically, they collectively produced over 2,000 pages of documents regarding their investments in SCUSA common stock and their suitability to serve as Lead Plaintiffs. Both Deka and City of Dearborn made available representatives to testify at Rule 30(b)(6) depositions in Dallas. Defendants also took a Rule 30(b)(6) deposition of a representative from Ridgeworth Capital Management, LLC, City of Dearborn's outside investment manager. Lead Plaintiffs also provided declarations in connection with their Motion for Class Certification. Dkt. No. 153 at App. 363-368.

Additionally, Lead Plaintiffs have retained attorneys who are qualified, experienced, and able to vigorously conduct the litigation. *Buettgen*, 2011 U.S. Dist. LEXIS 53888, at *13. Lead Counsel all have extensive experience litigating complex securities fraud class actions on behalf of injured investors throughout the country. *See, e.g.*, *Marcus v. J.C. Penney Co.*, No. 6:13-cv-736-MHS-KNM, 2016 U.S. Dist. LEXIS 115795, at *35-*36 (E.D. Tex. Aug. 29, 2016) ("Robbins Geller has served as class counsel in many securities class action cases and the Fund has submitted the firm's resume detailing notable successful cases. . . . Additionally, counsel has successfully opposed a motion to dismiss in this case, even under the heightened pleading standard of the PSLRA, and filed this Motion for Class Certification.").

For the foregoing reasons, adequacy is satisfied for purposes of the proposed Settlement.

#### 5. Questions of Law or Fact Common to the Classes Predominate Over Individual Questions and a Class Action Is Superior to Other Available Methods of Adjudicating the Controversy

The Supreme Court has recognized that predominance is a "test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997). Notably, "[c]onfronted with a request for settlement-only class

certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Id.* at 620.

Here, as in *Deepwater Horizon*, predominance is based "on the numerous common issues of liability." 739 F.3d at 815. *See Schleicher v. Wendt*, 618 F.3d 679, 682 (7th Cir. 2010) ("When a company's stock trades in a large and efficient market, the contestable elements of the Rule 10b-5 claim reduce to falsehood, scienter, materiality, and loss. Because each investor's loss usually can be established mechanically, common questions predominate and class certification is routine, if a suitable representative steps forward."). This is because the core elements of the claim – falsity, materiality, scienter, reliance, loss causation, and damages – all present issues susceptible to common proof. *E.g.*, *Basic v. Levinson*, 485 U.S. 224, 241 (1988) (reliance); *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 468-69 (2013) (materiality); *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 812 (2011) (loss causation); *Ludlow v. BP, P.L.C.*, 800 F.3d 674, 687 (5th Cir. 2015) (damages).

Any potentially individualized issues will not predominate over common ones. Therefore, pursuant to Rule 23(b)(3), the proposed Classes are "'sufficiently cohesive to warrant adjudication'" and predominance is established. *Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 636 (5th Cir. 2016).

Finally, superiority is likewise satisfied. Indeed, "because of the common issues in this case, resolution in a single forum would be beneficial to the class and would promote judicial economy." *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig.*, MDL No. 1643, 2006 U.S. Dist. LEXIS 9726, at *19 (E.D. La. Mar. 13, 2006).

Predominance and superiority are satisfied for purposes of the proposed Settlement.

## VI. SUBMISSION OF THE SETTLEMENT TO THE CLASSES IS APPROPRIATE

Pursuant to the Stipulation, and as explained in the Joaquin Declaration, the parties recommend to the Court a notice program and form of notice substantially in the form of Exhibits A-

1 to A-3 to the Stipulation. The Stipulation provides that a copy of the Notice of Pendency and Proposed Settlement of Class Action (the "Notice") (Stipulation, Ex. A-1, App. 056-App. 078), along with the Proof of Claim and Release (the "Claim Form") (Stipulation, Ex. A-2, App. 079-App. 088), will be mailed to each Class Member who can be identified with reasonable effort and to each nominee who was a security holder of record for Class Members who purchased SCUSA common stock during the Class Period. The Stipulation also provides the Summary Notice (Stipulation, Ex. A-3, App. 089-App. 093) to be published once in the national edition of *Investor's Business Daily* and once over the *PR Newswire* shortly after mailing the Notice. The Notice details the Settlement's terms, the rights of Class Members to share in the recovery, to object to the Settlement or request exclusion. The Notice and Summary Notice also provide the date, time, and place of the Settlement Hearing and the right of Class Members to be heard at the hearing. Finally, they provide the name, address and phone number of Lead Counsel's representative for inquiries. The form and manner of the Notice, Claim Form and Summary Notice proposed here fulfill all of the requirements of Federal Rule of Civil Procedure 23, the PSLRA and due process.

## VII. PROPOSED SCHEDULE

In connection with preliminary approval of the Settlement, the Court should set a final approval hearing date, dates for mailing the Notice and Claim Form and publication of the Summary Notice, and deadlines for objecting to the Settlement, submitting requests for exclusion and filing papers in support of the Settlement. The parties propose the following schedule:

| ***EVENT*** | ***TIME FOR COMPLIANCE*** |
|---|---|
| Deadline for commencing mailing of the Notice and Claim Form to Class Members (the "Notice Date") | 21 calendar days after entry of the Notice Order |
| Deadline for publication of Summary Notice | 10 calendar days after the Notice Date |

| *EVENT* | *TIME FOR COMPLIANCE* |
|---|---|
| Deadline for filing initial papers in support of final approval of the Settlement, Plan of Allocation, and application for an award of attorneys' fees and expenses | 35 calendar days prior to the Settlement Hearing |
| Deadline for submitting objections and requests for exclusion | 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply in response to any objections and in further support of approval of the Settlement and Plan of Allocation, or in support of application for an award of attorneys' fees and expenses | 7 calendar days prior to the Settlement Hearing |
| Settlement Hearing | Approximately 100 calendar days from entry of the Notice Order, at the Court's convenience |
| Deadline for submitting Claim Forms | 120 calendar days after the Notice Date |

## VIII. CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court grant the motion for preliminary approval of the proposed Settlement and enter the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice.

DATED: July 31, 2020

Respectfully submitted,

LAW FIRM OF BALON B. BRADLEY
BALON B. BRADLEY
Texas Bar No. 02821700
balon@bbradleylaw.com

*/s/ Balon B. Bradley*
BALON B. BRADLEY

11910 Greenville Avenue, Suite 220
Dallas, TX 75243
Telephone: 972/991-1582
972/755-0424 (fax)

KENDALL LAW GROUP, PLLC
JOE KENDALL
Texas Bar No. 11260700
jkendall@kendalllawgroup.com
3811 Turtle Creek Blvd., Suite 14150
Dallas, TX 75219
Telephone: 214/744-3000
214/744-3015 (fax)

***Local Counsel for the Class***

ROBBINS GELLER RUDMAN
& DOWD LLP
WILLOW E. RADCLIFFE (*pro hac vice*)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)

ROBBINS GELLER RUDMAN
& DOWD LLP
ELLEN GUSIKOFF STEWART
MATTHEW I. ALPERT (*pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

GRANT & EISENHOFER P.A.
JAMES J. SABELLA (*pro hac vice*)
DANIEL L. BERGER
CAITLIN M. MOYNA (*pro hac vice*)
485 Lexington Avenue, 29th Floor
New York, NY 10017
Telephone: 646/722-8500
646/722-8501 (fax)

***Co-Lead Counsel for the Class***

VANOVERBEKE, MICHAUD & TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI 48201
Telephone: 313/578-1200
313/578-1201 (fax)
tmichaud@vmtlaw.com

***Additional Counsel for Plaintiff***

**CERTIFICATE OF CONFERENCE**

I hereby certify that on July 30, 2020, I, Willow E. Radcliffe, as counsel for the Class in the above-captioned matter, received confirmation via email from Wallis M. Hampton, counsel for Underwriter Defendants, and Matthew A. McGee, counsel for SCUSA Defendants, with respect to the instant motion, that defendants do not oppose such motion.

Willow E. Radcliffe

WILLOW E. RADCLIFFE (admitted *pro hac vice*)

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served on all counsel of record on July 31, 2020 via CM/ECF, in accordance with the Federal Rules of Civil Procedure.

/s/ Balon B. Bradley
BALON B. BRADLEY